UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
DARLENE SCHAEFER,

              Plaintiff,

  -against-

IC SYSTEM, INC.,

              Defendant.
------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 17-CV-1920 (FB) (SJB)

Appearances:

*For the Plaintiff*:
ABEL L. PIERRE
Law Office of Abel L. Pierre, Attorney at
    Law, P.C.
140 Broadway
New York, NY 10005

*For the Defendant*:
PETER G. SIACHOS
Gordon & Rees LLP
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932

**BLOCK, Senior District Judge:**

Plaintiff Darlene Schaefer ("Plaintiff") asserts eight claims against debt-collector I.C. System, Inc. ("ICS") for violations of New York and federal law relating to ICS's effort to collect a debt from Plaintiff in December 2016. Plaintiff and ICS each filed a motion for summary judgement under Federal Rule of Civil Procedure 56. ICS moves for judgment on all claims, Plaintiff moves with respect to Counts II, III, and V only. For the following reasons, the Court grants summary judgment in favor of ICS on Counts IV and V and otherwise denies both motions.

I.

On a motion for summary judgment, the Court views all evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Fed. R. Civ. P. 56(c). Unless noted, the following facts are undisputed.

In September 2016, Plaintiff submitted a petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York. Pursuant to Bankruptcy Code § 362, Plaintiff's petition triggered an automatic stay of all debt collection activity related to "claim[s] against the debtor that arose *before* the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a)(6) (emphasis added). In December 2016, while the stay was in effect, ICS called Plaintiff's cellular phone on at least two occasions in connection with a debt Plaintiff owed Con Edison (the "Debt").

The parties' primary dispute is whether the Debt arose before Plaintiff filed the bankruptcy petition (in which case the Debt would be covered by the stay) or after (in which case it would not be covered): ICS maintains that the Debt arose on "October 3, 2016—two weeks *after* the Bankruptcy Petition was filed" and that Con Edison assigned the debt to ICS for collection on November 11, 2016. Conversely, Plaintiff insists that the Debt originated "[s]ome time prior to September of 2016" and that it was assigned to ICS "for further collection activity" "[s]ometime after

[her] bankruptcy filing." While Plaintiff does not identify a precise date on which the debt arose, she argues that it "defies logic" and "stretches credulity to suggest [as ICS does] that the Con Edison debt arose in October 2016 and was then placed with a collection agency barely one month later." She notes, for instance, that a separate debt incurred with Con Edison and assigned to ICS was not assigned for 21 months. Also, ICS admits that Con Edison assigned it multiple debts associated with Plaintiff, and that at least one debt originated pre-bankruptcy and was subject to the stay.[1]

The parties also dispute whether ICS utilized a pre-recorded voice message or automatic telephone dialing system ("ATDS") for the December 2016 calls. According to Plaintiff, "each call that [she] answered from [ICS] was preceded by a pause or 'dead air' before a pre-recorded voice came online." For its part, ICS avers that it "does not use a pre-recorded voice on its outbounds calls," and that by "early 2016" it was using a dialing system, known as "LiveVox Human Call Initiator," that did not qualify as an ATDS.

Plaintiff filed the operative Amended Complaint in May 2017, asserting five claims against ICS under the Fair Debt Collection Practices Act ("FDCPA"),

---

[1] Neither party served third-party discovery requests on Con Edison, who would presumably have information about the exact debt(s) Plaintiff incurred, when they originated, and the date(s) on which they were assigned to ICS.

15 U.S.C. § 1692 *et seq*, two claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*, one claim under New York General Business Law ("GBL") § 349, and one claim under U.S. Bankruptcy Code § 362.[2] The FDCPA claims (Counts II–V), New York GBL claim (Count VIII), and the Bankruptcy Code claim (Count IX) all relate to ICS's alleged violation of the automatic stay. The TCPA claims (Counts VI–VII) relate to ICS's purported use of ATDS equipment. The parties completed discovery in early 2019 and thereafter each moved for summary judgment.

## II.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); Fed. R. Civ. P. 56(c).

A.  FDCPA Claims (Counts II–V).

Counts II through V of the Amended Complaint charge ICS with violating the FDCPA by contacting Plaintiff "while a bankruptcy stay was in effect," and thereby engaging in "misleading communications" about a debt, *see* 15 U.S.C. § 1692e

---

[2] In June 2018, the Court dismissed Count I—alleging that ICS sought to "harass, oppress, or abuse" Plaintiff in violation of FDCPA § 1692d—for failure to state a claim under Rule 12(b)(6).

4

(Count II); falsely representing the "legal status" of a debt, *see* § 1692e(2) (Count III); attempting to collect a debt through "unfair or unconscionable means," *see* § 1692f (Count IV); and attempting to collect a debt that was not "expressly . . . permitted by law," *see* § 1692f(1) (Count V). Courts review FDCPA claims under the "least sophisticated consumer" standard, "measur[ing] the questioned conduct 'by how the least sophisticated consumer would interpret it.'" *Jacobson v. Healthcare Fin. Servs., Inc.*, 434 F. Supp. 2d 133, 137 (E.D.N.Y. 2006), *rev'd on other grounds*, 516 F.3d 85 (2d Cir. 2008).

Plaintiff moves for summary judgment on Counts II, III, and V, arguing that the "least sophisticated consumer" would have understood ICS's attempt to collect the Debt to "mean that the debt was then due and collectible; but in fact, it was not so because of the automatic bankruptcy stay." *See* 11 U.S.C. § 362(a)(6). ICS also moves for summary judgment—on all FDCPA Counts—on the ground that the Debt originated after Plaintiff filed for bankruptcy and, as a matter of law, that an attempt to collect a "post-petition debt [does] not violate the automatic stay." In part, both Plaintiff and ICS have it wrong.

With respect to Counts II and III (the § 1692e claims), genuine issues of material fact preclude summary judgment in favor of either party. Those claims allege that when ICS contacted Plaintiff in December 2016, it violated the automatic stay, which is an assertion that depends, in turn, on whether the Debt originated

5

before or after September 20, 2016, when Plaintiff filed her petition. Given that the parties raise a genuine dispute over when the Debt originated, and because that fact is "material" to the outcome of Counts II and III, summary judgment on those Counts is denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[3]

However, Counts IV and V (the § 1692f claims) may be resolved as a matter of law. In *Tsenes v. Trans-Continental Credit & Collection Corp.*, this Court held that for § 1692f claims, plaintiffs must plead and prove conduct beyond what they alleged in connection with claims brought under other sections of the FDCPA. 892 F. Supp. 461, 466 (E.D.N.Y. 1995). In other words, a plaintiff must do "more than to recite the conduct that he alleged violated Section 1692e and replace the word 'misleading' with the phrase 'unfair and unconscionable.'" *Ceban v. Capital Mgmt. Servs., L.P.*, 2018 WL 451637, at *8 (E.D.N.Y. Jan. 17, 2018) (holding that a cause

---

[3] ICS raises two alternative arguments: That (1) Plaintiff cannot prove a "willful" violation and (2) the "Bankruptcy Code precludes . . . FDCPA claims" based upon violations of a bankruptcy stay. The first argument concerns an issue of fact that cannot be resolved on a motion for summary judgment. The second is a misstatement of law: The case that ICS cites as support, *Necci v. Universal Fidelity Corp.*, 297 B.R. 376 (Bankr. E.D.N.Y. 2003), held only that "an FDCPA claim based upon a violation of *Section 524* [was] barred;" *Necci* did not address claims based upon violations of a stay under Section 362. *Id.* at 381 (emphasis added) (citing *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002) (noting the different remedial schemes of each subsection: "In the 1984 amendments [to the Bankruptcy Code], Congress added . . . to § 362, expressly conferring on debtors the right to sue for damages for a willful violation of the automatic stay. Section 524 was amended on the same day, but no similar provision, providing a private right of action for violation of the discharge injunction, was added.")).

of action based on the same conduct "would render the words 'unfair' and 'unconscionable' meaningless" (citing *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006))). In this case, even after two years of discovery, Plaintiff fails to identify any misconduct in connection with her § 1692f claims beyond what she alleged in relation to her § 1692e claims. As she merely recites the same allegations, replacing the word "misleading" with "unfair and unconscionable," Counts IV and V fail as a matter of law.

B. TCPA Claims (Counts VI & VII).

The TCPA prohibits "any automatic telephone dialing system or an artificial or prerecorded voice" in calls made (a) to cellular phones (b) without the "express prior consent" of the recipient. 47 U.S.C. § 227(b)(1)(A)(iii).[4] Plaintiff claims that ICS used an ATDS and/or a prerecorded voice (Count VI), and because ICS acted "willfully or knowingly" in doing so, that it should be subject to treble damages (Count VII). ICS urges that it is entitled to summary judgment on both claims as (1) that the dialing system it used to make calls—"LiveVox Human Call Initiator"— does not qualify as ATDS and (2) because "Plaintiff provided consent to the creditor, Con Edison, to call her cellular phone." Neither argument warrants summary judgment in ICS's favor.

---

[4] An "ATDS" is any technology or equipment that has the capacity "(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1).

7

To start, whether or not LiveVox HCI qualifies as ATDS, ICS has failed to establish that it used LiveVox HCI when making the offending phone calls: The sum total of ICS's evidentiary support is a Declaration from the company's General Counsel who, lacking personal knowledge of how the calls were made, relied on an "Account Summary" document that, critically, does not contain any reference to "LiveVox" or other dialing system. As to the assertion that Plaintiff "consented" to the debt-collection phone calls, ICS offers no support whatsoever.[5] On the other hand, the Court may draw a reasonable inference that ICS employed an ATDS or prerecorded voice based on Plaintiff's sworn statement that "each call that [she] answered from [ICS] was preceded by a pause or 'dead air' before a pre-recorded voice came online." *See, e.g.*, *Lardner v. Diversified Consultants Inc.*, 17 F. Supp. 3d 1215, 1218 (S.D. Fla. 2014) (a dialing system that "determines if someone comes on the line by playing an interactive recorded voice" qualifies as an ATDS). ICS's motion for summary judgment on Counts VI and VII is denied.

C.  New York GBL Claim (Count VIII).

To succeed on a claim under New York GBL § 349, a plaintiff must show that they were "injured as a result" of a defendant's "[d]eceptive acts or practices in the

---

[5] ICS posits, counterfactually, that "Plaintiff does not allege that she did not give consent to [Con Edison]." That is insufficient: Prior express consent is "an affirmative defense to an alleged TCPA violation, for which the defendant bears the burden of proof." *Levy v. Receivables Performance Mgmt.*, LLC, 972 F. Supp. 2d 409, 417 (E.D.N.Y. 2013).

8

conduct of . . . business, trade or commerce or in the furnishing of any service." Plaintiff claims that ICS violated § 349 by "unlawfully seeking to collect a debt" covered by the automatic stay "as a means to [exert] pressure" and that she suffered "emotional distress" as a result. ICS moves for summary judgment on the ground that Plaintiff "failed to allege that her injury stemmed from her reliance on the allegedly deceptive act."

ICS misconstrues the burden of proof as requiring "reliance": New York Courts "have repeatedly stated [that] reliance is *not* an element of a section 349 claim" and that plaintiffs need only "show that the defendant's material deceptive act *caused* the injury." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 731 N.E.2d 608 (N.Y. Ct. Appeals 2000) (emphasis added). Summary judgment on Count VIII is denied.

D.  Bankruptcy Code Claim (Count IX).

Bankruptcy Code § 362 provides that an "individual injured by any willful violation of a stay" is entitled to "recover actual damages, including costs and attorneys' fees." 11 U.S.C. § 362(k)(1). Count IX of the Amended Complaint alleges that ICS willfully violated the stay by "continuing collection activity after Plaintiff filed for relief under the US Bankruptcy Code." ICS contends that it "did not receive actual reasonable notice of the bankruptcy" and, therefore, "cannot have willfully violated the automatic stay." In short, the record does not support ICS's

9

assertion that it lacked notice; indeed ICS admits that it stopped collection efforts on another debt associated with Plaintiff because of the very same September 20, 2016 bankruptcy petition.[6] The motion for summary judgment on Count IX is denied.

## CONCLUSION

For the reasons stated in this Memorandum, ICS is entitled to summary judgment on Counts IV and V. The parties' respective motions for summary judgment are denied in all other respects.

**SO ORDERED**.

     /S/ Frederic Block  
FREDERIC BLOCK  
Senior United States District Judge

Brooklyn, New York  
March 6, 2020

---

[6] ICS also argues that it took steps to determine if the Debt was covered by the stay by performing a search of "the LEXIS-NEXIS bankruptcy filing database before any debt collection activity" occurred. However, the "Account Summary" for the purported debt does not reflect that a search was performed.